# STATE OF CONNECTICUT *v.* SULTAN WILLIAMS
## (AC 27085)

Flynn, C. J., and McLachlan and Robinson, Js.

Argued February 7—officially released June 24, 2008

*Robert M. Berke,* with whom was *Samantha A. Kret-zmer,* for the appellant (defendant).

*Sarah Hanna,* deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Marc R. Durso,* assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Sultan Williams, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1). On appeal, the defendant claims that the trial court abused its discretion and deprived him of his right to an impartial jury when it (1) discharged a regular juror and replaced her with the alternate juror and (2) denied his motion for a continuance.[1] Although we conclude that the court abused its discretion under the circumstances of this case, we nevertheless affirm the judgment because the record is inadequate to conclude that the defendant was prejudiced.

The charge against the defendant arose from an incident that occurred on the afternoon of November 22, 2003, in Stratford. Two police officers were dispatched to an accident involving the defendant's vehicle and a

---

[1] In his brief on appeal, the defendant raised two additional issues concerning the denial of his motion for a judgment of acquittal with respect to the operation of the vehicle and the denial of his motion to preclude certain statements of one of the arresting officers. The defendant withdrew those two claims at the time of argument before this court, and we therefore do not address them.

parked, unoccupied vehicle. The defendant was not driving his vehicle at the time the officers arrived at the scene, and they could not recall whether he was inside or outside of the vehicle when they first approached him. A front tire of the defendant's vehicle was flat, and there was damage to the front end area. The parked vehicle was damaged in the left rear area. Upon questioning the defendant, the officers detected the odor of alcohol on his breath and observed that he was unsteady on his feet. After failing certain field sobriety tests, the defendant was arrested and transported to the Stratford police station.

The defendant elected to be tried by a jury. During jury selection, the defendant exhausted his peremptory challenges after the selection of five jurors. At that point he requested two additional challenges, and that request was denied by the court. After the sixth juror was accepted, the court indicated that counsel were to select one alternate juror. At the conclusion of the voir dire of juror T,[2] counsel for the defendant challenged him for cause. The court refused to excuse T for cause, and T became the alternate juror. The defendant did not seek any additional peremptory challenges at that time.

After jury selection had been completed, the court indicated that outstanding pretrial motions would be heard on Tuesday, May 31, 2005, at 10 a.m. and that the jury would be sworn immediately thereafter. When counsel arrived the morning of May 31, the court informed them that all of the jurors were not present because of "a miscommunication of some kind." Although the court told the selected jurors that they were to report on May 31, one of the jurors, M, additionally was told to contact the jury administrator before coming that day in the event of a change in the schedule.

___

[2] We refer to the jurors by initial to protect their legitimate privacy interests. *State* v. *Wright*, 86 Conn. App. 86, 88 n.3, 860 A.2d 278 (2004).

Any caller who telephoned the number provided was connected to a recorded message and instructed not to report until contacted by the court. Most of the jurors had not telephoned the designated number and came to the courthouse as originally instructed. The clerk was trying to contact the jurors who had not appeared, and the court was hopeful that all would be reached and available by the time the arguments on the outstanding motions had concluded.

After the luncheon recess, the court informed counsel that six of the seven jurors were at the courthouse. The court reported that M, one of the six selected jurors, however, had "child care responsibilities" and was unable to make alternative arrangements. The alternate was available to replace her, and the court stated that counsel would proceed with the trial that afternoon. Counsel for the defendant objected to proceeding with the alternate as a regular member of the jury and requested that the court continue the trial until the following morning. The court overruled the objection. Counsel then concluded their arguments on the out-standing motions, and the trial commenced later that afternoon. The jury found the defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor or drugs. This appeal followed.

The defendant claims that the court abused its discretion in denying his motion for a continuance. The defendant argues that in denying that motion, thereby excusing M and replacing her with T, he was deprived of his right to an impartial jury. We agree that the court abused its discretion in denying the defendant's motion for a continuance, but we cannot conclude, on the basis of the record before us, that the defendant was prejudiced by that denial.

"The determination of whether to grant a request for a continuance is within the discretion of the trial court,

and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . In addition, we consistently have acknowledged that [o]ur role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives. . . .

"We have articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . .

"In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis. . . . In connection with this inquiry into harmless error, [w]e distinguish between two types of cases: those in which a constitutional right has been implicated by a denial of a continuance, and those of a nonconstitutional nature. . . .

Although prejudice is presumed in instances in which a defendant has suffered a deprivation of a constitutional right, in order to establish reversible error in nonconstitutional claims, the defendant must prove both an abuse of discretion and harm . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 801–802, 835 A.2d 977 (2003).

In the present case, through no fault of the defendant, a regular member of the jury, M, was not present on May 31, 2005. On the first day of jury selection, two jurors were accepted and were told that the trial would commence on May 31. No jurors were selected on the second day of jury selection. On the third day of jury selection, the remaining four regular jurors were accepted, and T, the alternate, was accepted by the state and challenged for cause by the defendant. When the court refused to excuse T for cause, he was added to the jury. The court informed the third and sixth jurors selected, as well as the alternate juror, that the trial would commence May 31 and asked them to provide emergency telephone numbers. With respect to the fourth juror and M, however, the court indicated that the trial would probably commence May 31 but that there was a possibility it would be delayed until the following day.

When M was selected, she particularly was concerned about the starting date of the trial. M taught at a middle school and had to make arrangements to procure a substitute teacher in her absence. The court told her to plan on being at the courthouse on May 31, but she also was told to telephone the jury administrator after 5 p.m. on Friday, May 27, or over the weekend for a recorded message in the event the schedule changed.[3]

[3] The colloquy between the court and M was as follows:

"The Court: All right. I've been telling everybody to come on Tuesday. It's just possible we may start on Wednesday and just go Wednesday to Friday. So, double-check before you come on Tuesday. But I need to take an emergency phone number from you. Our clerk will take it from you and

The recorded message specifically instructed jurors for

give you some instructions, and then you're going to go back up to the seventh floor and hand in some stuff.

"[M]: Okay.

"The Court: So, if you can do that.

"[Defense Counsel]: I'm sorry, Your Honor. Did you tell her it's at the other courthouse?

"The Court: I will.

"The Clerk: I just need a phone number—

"[M]: You mean like any time—

"The Clerk: One that you can be reached at in case there's an emergency in the last second. We need to tell you if there's a change in the trial schedule.

"[M]: Okay. [Provides telephone number.]

"The Clerk: Your social security number and your phone number are on here. And once you're done here, if you can just go up to the seventh floor and hand that to the jury administrator.

"[M]: Okay.

"The Court: Now, I'll go first. On—when you do report, we're going to be over on Golden Hill [Street].

"[M]: Okay.

"The Court: The other courthouse.

"[M]: Okay.

"The Court: So, when you come in, you'll go in the other courthouse; keep your little jury button there.

"[M]: Okay.

"The Court: And you'll go in the side door over at Golden Hill. Now, your turn.

"[M]: Okay. When will I know if I—if court's going to be [in] session, if I need to come on Tuesday?

"The Court: You will—there's a phone number.

"[M]: So, should I just assume I'm going to be here on Tuesday, and then I call? Is that what I do?

"The Court: Yeah.

"[M]: Okay. And when would I know that I'm not needed? I'm just thinking about them getting a substitute for school, for my teaching job.

"The Court: At this point, you should be planning on a substitute for Tuesday. [Unintelligible.]

"[M]: No, that's okay.

"The Clerk: What you should do is Friday, after five or on the weekend, you can call this number here.

"[M]: Okay.

"The Clerk: And it will confirm or—

"[M]: Okay.

"The Clerk: [Unintelligible.]

"[M]: All right. Today is Friday, so—

"The Court: Plan on being here Tuesday.

the case not to come in until further contacted by the court. Having heard the recorded message, M did not appear on May 31, and, when contacted by the clerk, stated that she was unable to make the necessary arrangements in order to be present that day in court.

Immediately after the luncheon recess, but before counsel had concluded their arguments on outstanding pretrial motions, the court informed counsel about M's inability to be present that day and indicated that they would be proceeding with T, the alternate juror, as the sixth juror. Counsel for the defendant objected. She stated that she would not have selected T as a member of the jury if the defendant had not exhausted his peremptory challenges. She requested that the trial commence the following morning, when M would be available. The court denied that request without giving any reason for its decision other than that the alternate was selected in the same manner as the regular jurors were selected.[4]

---

"[M]: Plan on being here Tuesday.

"The Court: Unless you hear something at the last minute.

"[M]: And then you'll call—basically, you'll call?

"The Court: You've got it. Thanks very much.

"[M]: All right. I'll see you on Tuesday."

[4] The colloquy between the court and defense counsel was as follows:

"[Defense Counsel]: With all due respect, Your Honor, the defense objects to proceeding with the alternate as part of the jury. We have our six jurors who were chosen. The defendant was out of peremptory challenges. The defendant would not have chosen [T]. It's not like [M is] saying, I can't ever come. I mean, she was told—

"The Court: She can't come today, [counsel].

"[Defense Counsel]: I know, but—

"The Court: She can't be here today, the trial starts today.

"[Defense Counsel]: Yeah, but that was not the defendant's fault that, you know—that was a miscommunication. I'm not saying it was someone's fault, but I'm saying, that's not part of our jury. I don't see why we couldn't proceed tomorrow with the jury, Your Honor. That's the alternate. That's not part of the jury.

"The Court: No, we're proceeding today and we're proceeding with six. Your objection is noted.

"[Defense Counsel]: Thank you, Your Honor.

In determining whether the trial court abused its discretion in denying the defendant's motion for a continuance, we look to the previously articulated factors. See *State* v. *Coney*, supra, 266 Conn. 801–802. The defendant timely made his request for a continuance. As soon as the court indicated that M could not be present that day and that the trial would proceed with T as the sixth juror, defense counsel objected and requested the continuance. The length of delay was a few hours at most. Counsel proceeded to conclude their arguments on outstanding motions that afternoon, and the trial commenced immediately thereafter. Although the transcript does not reflect the exact time that the jury was sworn, it does reflect that only one witness was called that afternoon and that her testimony had not concluded when court was adjourned.[5]

The state did not object to the defendant's request for a continuance. At oral argument before this court, the state conceded that "presumably" it would not have been inconvenienced by the delay because it had no expert witnesses scheduled to testify on May 31. Sarah Patrick, one of the arresting police officers, testified that afternoon. Patrick had testified earlier that day in connection with one of the defendant's outstanding motions. Patrick's testimony before the jury did not conclude that day; she returned the next day for continued cross-examination by defense counsel.

We next look to the legitimacy of the reasons proffered for the request for a continuance. The defendant wanted to be tried by the six regular members of the jury. He did not want to proceed with the alternate, T,

"The Court: The alternate was selected just like everybody else. We have a motion to suppress evidence. I'll hear from the defendant."

[5] Court resumed after the luncheon recess at page sixty-three of the transcript. Counsel concluded their arguments on the outstanding motions at page 114 of the transcript, and the jury was sworn. The witness began testifying at page 124 of the transcript, and court adjourned at page 172 of the transcript.

in place of M. During jury selection, the defendant had challenged T for cause,[6] and the court refused that request. The defendant could not exercise a peremptory challenge because they had been exhausted, and the court had refused to grant his request for additional challenges. M was not present because she had been told to telephone the jury administrator's office and, by a recorded message, had been instructed not to come to court until contacted by the court. M was unable to make alternative arrangements for that day but was available for the remainder of the trial. When presented with these reasons, the court summarily stated that "we're proceeding today and we're proceeding with six," and "[t]he alternate was selected just like everybody else."

Even though we afford great deference to a court's ruling on a motion for a continuance, we conclude that the court's denial was unreasonable and arbitrary under the unique circumstances of this case.

Having concluded that the court abused its discretion in denying the defendant's motion for a continuance, we must next determine whether he was prejudiced by that denial. "In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis." (Internal quotation marks omitted.) *State* v. *Coney*, supra, 266 Conn. 802. The defendant claims that he was deprived of his sixth amendment right to an impartial jury. He provides no analysis or case law, however, in

---

[6] Defense counsel challenged T for cause because T's vehicle had been struck from behind by an intoxicated driver. When T exited his vehicle, he spoke with the driver who "clearly smelled of alcohol and couldn't talk right." T indicated that he flagged down an officer who happened to be driving by and told him that "this guy's going to kill somebody." T also indicated that he had been a passenger in an automobile when his friend, the driver, was stopped and arrested for driving while intoxicated and that he had managed an employee who "was an alcoholic and . . . slammed into the back of a police car in the middle of the day."

support of this contention. Because the defendant has failed to assert a plausible constitutional claim, he bears the burden of showing that he was harmed by the denial of his motion for a continuance.

Although the defendant challenged T for cause during jury selection, he did not request additional peremptory challenges after the court refused to excuse T for cause. See *State* v. *Ross*, 269 Conn. 213, 230, 849 A.2d 648 (2004); *State* v. *Esposito*, 223 Conn. 299, 313, 613 A.2d 242 (1992). Whether the court improperly denied the defendant's request to excuse T for cause is not an issue on appeal. T was added to the jury as an alternate juror and became a regular member when the court excused M. Alternate jurors, by statute, must have the same qualifications and be selected in the same manner as regular jurors. General Statutes 54-82h (a).[7] The defendant has not demonstrated any specific harm resulting from the court's replacement of M by T, the alternate juror. We cannot presume that T was not an impartial juror under these circumstances.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] General Statutes § 54-82h (a) provides in relevant part: "Such alternate jurors shall have the same qualifications and be selected and subject to examination and challenge in the same manner and to the same extent as the jurors constituting the regular panel . . . ."